## L. F. Price v. The State.

### No. 2786.    Decided March 16, 1904.

**1.—Charge of the Court—Self-Defense.**

A charge of the court which limits the right of self-defense to an assault such as threatened life, or serious bodily injury, under a state of facts which showed that appellant had been attacked by the injured party with a whip, which attack in itself did not involve danger to life or serious bodily injury and which he had a right to resist in proportion to the character of such assault, is erroneous.

**2.—Same—Provoking Difficulty.**

A charge of the court which limits the law of provoking the difficulty to the purpose and intent without stating that appellant must do some act or use some words which in fact provokes the difficulty is erroneous.

**3.—Same.**

Where the facts show that the injured party made the first attack upon appellant, and his testimony shows that he did not provoke the difficulty, he is entitled to a charge upon the law of self-defense untrammeled and disconnected from the issue of provoking the difficulty.

Appeal from the County Court of Jones. Tried below before Hon. H. R. Jones.

Appeal from a conviction of aggravated assault; penalty, a fine of $250.

The opinion sufficiently states the case.

*J. F. Cunningham,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for aggravated assault. The evidence discloses there was ill will between the assaulted party, Lollar, and appellant in regard to some supposed slanderous re-marks made by Lollar in regard to a woman and appellant. Lollar was passing along the road, near appellant's residence, when appellant ap-proached and engaged him in conversation with reference to these re-marks. They had settled their matters amicably when the father of Lollar approached. Lollar says: "I don't remember all that was said; and by and by my father came up, and I spoke to him, and said: 'Well, me and Mr. Price has settled it.' And he says, 'It is all right.' And Price said it was a misunderstanding; and further remarked it was not after night but in the evening. And I spoke up and says, 'No, it was after dark,' and then he says, 'No, it was in the evening,' and I said again, 'No, it was after dark.' And then he drew up his hand with a knife in it, and says, 'You are a God-damn liar,' and then I says, 'You take that back.' He had stepped back a step or two, and then I sprang out of the wagon, and as I jumped, he ran under me and cut me six or seven times. He kept on cutting me until my father run in and jerked him off. Most of the cuts were on my back and side, left side, and one on the hand." The remarks had been made with reference to appellant being with Mrs. Hudson down on the river, along with other parties, on a fish-ing excursion; and the indication from the remarks seems to have con-veyed the idea this visit to the river may have been improper. And the question between the parties seemed to turn on whether he saw appellant and the other parties on the river about sunset, or after dark. Appellant contended it was before dark, and Lollar that it was after dark. Lollar and some of his family were also on the river fishing. Appellant, in regard to the immediate facts, testified that on the morning he saw Lollar passing, he decided to walk out where he was and rectify the matter in a peaceful manner, and ask him about it. "After he had ex-plained it, I said that if that be the case, Mr. Loller, it is all right. I didn't deny being down there, but we were going to catch a mess of fish for both families. And he remarked, 'No, it was not a fish fry, but just enough for breakfast.' While we were talking old Mr. Lollar came up and J. F. Lollar turned to him and says, 'Pa, it is all right; we have

settled it. He acknowledges it was after night.' I spoke up and says, 'No, it was after sundown, but not after night, not yet dark.' I said this in a mild way. And he called me a liar, a damn liar; and then I called him a God-damn liar. Then he drew up his whip and says, 'Take that back, you devil, or I will kill you.' I then stepped back from the wagon out of his reach. He jumped out and struck me and kept follow-ing me up, and I went to him then, and got up close to his left arm so that he could not hit me, and I cut him with my knife. I hardly realized what I was doing, until Grandpa Lollar pulled us apart. At the time he shoved us apart I suppose we were some fifteen or twenty feet from the wagon. The knife I used was a two-bit barlow. I had the little blade open. When Mr. Lollar separated us, J. F. Lollar says, 'Pa, go bring me my gun, I will kill the devil.' " Appellant's head was more or less cut and bruised by means of the whip used by Lollar. There was also some question of impeachment by means of contradictory state-ments.

After giving a general definition of self-defense and the law of re-treat, the court thus applies the law: "If you believe that the defendant committed the assault as a means of defense, believing at the time he did so (if he did do so) that he was in danger of losing his life, or of serious bodily injury at the hands of said J. F. Lollar, then you will acquit the defendant, unless you further believe from the evidence be-yond a reasonable doubt that defendant sought the meeting with the said J. F. Lollar for the purpose of provoking a difficulty with said J. F. Lollar, with intent to take the life of said J. F. Lollar [or] to do him such bodily injury as might probably end in the death of J. F. Lollar, and if you so believe from the evidence beyond a reasonable doubt, then you are instructed that if defendant sought such meeting for the said purpose and with such intent, defendant would not be permitted to jus-tify on the ground of self-defense, even though he should thereafter have been compelled to act in his own self-defense; but if he had no such pur-pose and intention in seeking to meet the said J. F. Lollar, then his right of self-defense would not be forfeited, and he could stand his ground and defend himself by the use of such means of defense as the facts and circumstances indicated to be necessary to protect himself from danger or what reasonably appeared to him at the time to be danger, viewed from the defendant's standpoint." Several objections are urged to this charge. First, it limits his right of self-defense to an assault such as threatened life or serious bodily injury; second, the limitation in regard to provoking the difficulty is not the law; and third, that his right of self-defense is not given without the limitation of provoking the diffi-culty. We think all these propositions are well taken. The law of self-defense under the facts detailed is not limited to loss of life of threat-ened serious bodily injury. Appellant would have the right to defend whether his life was threatened, or he was in danger of serious bodily

injury. The law of self-defense is proportioned to the danger threatened; and it does not necessarily involve the loss of life or serious bodily injury. He had the right to meet the assault the prosecuting witness was making. It would hardly be contended that Price's life was in danger. If when Lollar jumped from the wagon and made the attack on him, it was only for the purpose of striking with the whip, he would have the right to resist this in his self-defense, whether there was threatened serious bodily injury or not. Of course, the resistance must be in proportion to the nature and character of the assault. The charge on self-defense was entirely too restrictive. The law of provoking the difficulty is limited, as the above quotation will show, to the purpose and intent with which appellant sought Lollar. This is not a correct charge on this issue. Wherever provoking a difficulty is an issue, the party who provokes it must do some act or use some words, or do something which provokes it. The mere purpose and intent is not sufficient.

Again, appellant had the legal right to have a charge on self-defense untrammeled by and disconnected with the issue of provoking a difficulty. His testimony clearly raises the issue of self-defense.

The charge in regard to impeachment of witnesses is not correct; but we do not deem it necessary to discuss it, as upon another trial the court will properly present that issue. For the errors indicated the judgment is reversed and the cause remanded.

<em>Reversed and remanded.</em> ·